UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RON ERIC WRIGHT,

     Plaintiff,

        v.                             CAUSE NO. 3:24-CV-973-JD-APR

CENTURION HEALTH OF INDIANA
LLC, et al.,

     Defendants.

OPINION AND ORDER

Ron Eric Wright, a prisoner without a lawyer, filed an amended complaint against five defendants alleging they were deliberately indifferent to his medical needs pertaining to a serious skin infection. ECF 13. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Wright, who is housed at Westville Correctional Facility, alleges that beginning in July 2024, he developed a skin rash and infection that covers his chest, arms, legs, abdomen, and upper groin area. ECF 13 at 3. He asserts the infection is painful and causes him to have intermittent fevers. *Id*. Wright states he does not have much of an

appetite and has lost more than forty pounds. *Id*. Initially, on July 2, 2024, after he showed the sergeant on duty the rash on his arms and legs, the sergeant called the prison's urgent care unit. *Id*. Wright was seen that day by a nurse who examined him, took photos of his arms and legs, and contacted Dr. Andrew Liaw. *Id*.

Dr. Liaw examined Wright and diagnosed him as having a bacterial infection. *Id*. at 4. He was given an injection containing Benadryl, a steroid injection, and prescribed intravenous antibiotics. *Id*. Dr. Liaw also prescribed a daily oral antibiotic and topical steroid cream. *Id*. Wright states it took several days to receive the medication and his condition declined during that period. *Id*.

On July 9, 2024, Wright spoke to a nurse during morning medication pass and showed her his rash. *Id*. She phoned urgent care and was seen by the same nurse he saw on July 2. *Id*. She took additional photos and contacted Dr. Liaw. *Id*. Dr. Liaw did not see Wright that day, but diagnosed his condition over the phone. *Id*. He said Wright's skin rash was a viral infection, not a bacterial infection. *Id*. Dr. Liaw prescribed another antibiotic and more steroid cream. *Id*. However, when Wright awoke the following day, his condition had worsened because he now had boils on his arms and legs. *Id*. He showed his case manager his rash and she told him she could not help him, but he could file a grievance. *Id*. at 4-5.

On July 14, 2024, Wright received his medication and attempted to clean and treat his infection. *Id*. at 5. However, during the next twenty-three days, he was unable to clean his skin because there was no hot water. *Id*. Given the lack of hot water and the fact that the medical staff did not help him with cleaning his skin, his condition

2

worsened. *Id*. Wrights asserts that by the end of July 2024, he felt very sick, but later he began to feel better. *Id*. However, he subsequently developed more boils and submitted a healthcare request form to see a doctor, but he did not receive a response. *Id*.

On August 5, 2024, Wright saw Dr. James Jackson.[1] *Id*. He prescribed an antibiotic along with another round of steroids. *Id*. Dr. Jackson told Wright he should submit another healthcare request form, if his condition did not improve. *Id*. Three days later, Wright submitted another healthcare request form, but he did not receive a response. *Id*. Shortly thereafter, Wright submitted a grievance about his medical treatment. *Id*.

On August 30, 2024, Wright wrote to Health Services Administrator ("HSA") Nicole Bridegroom. *Id*.; ECF 13-1 at 11. He explained he had a skin infection since July 2024 and had been seen briefly by a doctor who prescribed antibiotics and steroid cream. ECF 13-1 at 11. Wright indicated that a nurse told him he had a staph infection, but he was never tested for it. *Id*. He explained the infection continued to reappear on parts of his body, was painful, and difficult to keep clean. *Id*. He submitted four healthcare requests forms, but had not received responses to them. *Id*. Wright concluded the letter by asking HSA Bridegroom for help in seeing a doctor. *Id*.

On September 3, 2024, Wright was given a medical pass. *Id*. at 6. He was seen by a nurse, who apologized for the delay and told him she had received only one of his

---

[1] Wright has not named Dr. Jackson as a defendant in this case.

healthcare request forms. *Id.* The nurse explained she could not help him without first consulting with the doctor and medical staff would be in touch. *Id.*

On September 7, 2024, Wright was given a pass to pick up a prescription for an antibiotic. *Id.* However, he was allergic to the antibiotic and previously told Dr. Liaw at his July 2, 2024, appointment that he could not take the antibiotic. *Id.* Wright returned the antibiotic to the nurse on duty who changed the prescription. *Id.* The new antibiotic initially helped, but then it stopped working. *Id.* Because Wright was concerned about getting a staph infection, he submitted another healthcare request form on September 28, 2024. *Id.* He was seen by a nurse, who ordered a skin biopsy, but it was never done. *Id.*

Given these events, Wright asserts the defendants violated his rights under the Eighth Amendment because they were deliberately indifferent to his serious skin infection by delaying access to constitutionally adequate medical care. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating deliberate-

4

indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-98 (internal quotations and citations omitted).

The law has "identified several circumstances that can be enough to show deliberate indifference" by a medical professional. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016). "First, and most obvious, is [an] official's decision to ignore a request for medical assistance." *Id.* Second, an inmate can provide evidence the medical professional "persist[ed] in a course of treatment known to be ineffective." *Id.* at 730. Third, an inmate can provide evidence of "an inexplicable delay in treatment which serves no penological interest." *Id.*; *see also Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).

Wright alleges that Dr. Liaw was deliberately indifferent to his serious medical needs related to his skin rash. The events in this case indicate that Dr. Liaw first saw Wright on July 2, 2024, when he diagnosed him as having a bacterial infection and prescribed Benadryl, a steroid injection, and intravenous antibiotics. He also prescribed an oral antibiotic and topical steroid cream for daily use. Wright states it took several days to receive the medication and his condition declined during this time, but he does not allege facts from which it can be plausibly inferred that Dr. Liaw caused this delay. A week later, on July 9, 2024, when a nurse phoned Dr. Liaw about Wright's condition, Dr. Liaw diagnosed Wright with a bacterial infection and prescribed another antibiotic and more steroid cream. However, Wright asserts that, when he awoke the following day, his infection had worsened because he now had boils on his arms and legs. While Wright was unhappy with Dr. Liaw's medical treatment, his actions do not amount to deliberate indifference. Dr. Liaw examined Wright and provided him with medical treatment twice in July 2024. When Wright did not respond well to one treatment, he tried a different treatment. Additionally, to the extent Wright avers that Dr. Liaw misdiagnosed his condition or prescribed a medication to which he was allergic, those actions constitute negligence. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (Negligence does not constitute deliberate indifference); *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994) ("Obduracy and wantonness rather than inadvertence or mere negligence characterize conduct prohibited by the Eighth Amendment."). In short, Wright has not pled facts from which it can be plausibly inferred Dr. Liaw did not exercise his medical judgment when he assessed Wright's condition and provided him with treatment.

6

Wright next contends that HSA Bridegroom was deliberately indifferent to his serious medical condition because she did not respond to his August 30, 2024 letter. In his letter, Wright explained that he contracted a serious skin infection in July 2024 and had a brief appointment with a doctor who prescribed antibiotics and steroid cream. *Id*. However, because his infection did not improve, he submitted four healthcare request forms, but did not receive responses to his requests. Wright asked HSA Bridegroom for help in seeing a doctor.

While Wright asserts HSA Bridegroom did not response to his August 30, 2024, letter, the record shows Wright was given a medical pass on September 3, 2024, just four days after he wrote the letter. He was seen by a nurse that day, who apologized for the delay and told him she had received only one of his request forms. The nurse told Wright that she needed to consult with the doctor about his condition and medical staff would be in touch. Four days later, on September 7, 2024, Wright was given a pass to pick up medication. Because HSA Bridegroom's actions here do not amount to deliberate indifference, he may not proceed against her.

Wright has also sued Centurion Health Services of Indiana, LLC, asserting it has a policy of delaying medical treatment. ECF 13 at 7. There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and this corporate entity cannot be held liable for a constitutional violation solely because it employs medical staff. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020). A private company performing a public function can be sued for constitutional violations under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), but it "cannot be held liable for the unconstitutional acts of

their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of the official policy requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021).

Here, Wright speculates that Centurion Health has a policy or practice of delaying medical treatment and that this policy is responsible for the delay in receiving treatment for his skin infection. However, Wright has not alleged facts from which it can be plausibly inferred that Centurion Health has a policy or practice of delaying care or that it is the reason for the alleged delay in receiving treatment for his skin infection. He has not stated a claim against Centurion Health.

Wright also asserts that Centurion Health violated Indiana Department of Correction policy, which mandates that, after an inmate submits a healthcare request form, he must be triaged within twenty-four hours and scheduled for an appointment within seven days. ECF 13 at 7. However, a policy violation, on its own, does not state a constitutional claim. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"); *Conner v. Hoem*, 768 Fed. Appx. 560, 564 (7th Cir. 2019) ("In any case, the Constitution does not require state actors to enforce their own policies and regulations.") (citing *Garcia v. Kankakee Cnty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002)). Therefore, Wright cannot proceed here.

8

Wright next contends that Dr. Liaw and HSA Bridegroom violated his rights under the Equal Protection Clause of the Fourteenth Amendment. ECF 13 at 9. "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). To state such a claim, a prisoner must allege that the "defendants intentionally treated him differently because of his race . . . ethnicity, sex, religion, or other proscribed factor . . .." *Id*. at 719–20 (citing *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)); *see also David K. v. Lane*, 839 F.2d 1265, 1271–72 (7th Cir. 1988) (collecting cases and noting discrimination must be intentional, purposeful, or have a discriminatory motive). Wright must show "the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on an identifiable group." *Id*.

Here, Wright has not identified himself as being part of any group, protected or otherwise. He also does not allege that Dr. Liaw or HSA Bridegroom intentionally treated him differently than other inmates seeking medical treatment on the basis of his race, ethnicity, sex, religion, or other proscribed factor. Wright's allegations are too vague to state equal protection claims against these two defendants.

Wright has also supplemented his amended complaint by adding Eighth and Fourteenth Amendment claims against a prison dental hygienist and dentist for delaying dental treatment in March 2025. ECF 13 at 8. He states a prison dentist

evaluated a painful tooth and determined two of his teeth needed to be extracted. However, the procedure was not performed until three months later in June 2025.

The claims against the dental hygienist and dentist are unrelated and "unrelated claims against different defendants belong in different suits . . .." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Wright can pursue claims against the dental hygienist and dentist in a separate lawsuit if he decides to file another case. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) (District courts may direct a plaintiff "to file separate complaints, each confined to one group of injuries and defendants."). This court offers no opinion about the wisdom of pursuing this course of action or the merit of any potential claim he may have against either the dental hygienist or dentist.

As a final matter, Wright filed a motion for default judgment. ECF 17. He asks the court to enter a default judgment because the court has not screened the amended complaint. ECF 17. Because the court has now screened the amended complaint, his motion will be denied as moot.

As discussed, Wright's amended complaint does not state a claim for which relief can be granted. If Wright believes he can state a claim based on (and consistent with) the events described in this complaint, he may file a second amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file a second amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the

10

word "Second Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) DISMISSES Dental Hygienist and Dentist without prejudice pursuant to Federal Rule of Civil Procedure 21;

(2) DENIES AS MOOT Ron Eric Wright's motion for default judgment (ECF 17);

(3) GRANTS Ron Eric Wright until **August 31, 2026**, to file a second amended complaint; and

(4) CAUTIONS Ron Eric Wright that, if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on July 29, 2026

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT

11