UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RON ERIC WRIGHT,<br><br>Plaintiff,<br><br>v.<br><br>CENTURION HEALTH OF INDIANA LLC, ANDREW LIAW, and NICOLE BRIDEGROOM,<br><br>Defendants. | CAUSE NO. 3:24-CV-973-JD-APR |

OPINION AND ORDER

Ron Eric Wright, a prisoner without a lawyer, filed a second amended complaint against three defendants alleging they were deliberately indifferent to his medical needs related to his serious skin infection. ECF 20. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Wright, who is housed at the Westville Correctional Facility, asserts that shortly after he arrived at Westville, in October 2023, he developed a skin infection that covered his arms, legs, abdomen, chest, and groin area. ECF 20 at 2. He states the infection was painful and caused him to have fevers and lose forty pounds in just a few months. *Id.*

Initially, on July 2, 2024, Wright was seen by a nurse who took photos of his skin infection and then contacted Dr. Andrew Liaw. *Id*.

Dr. Liaw examined Wright and diagnosed him with a bacterial infection called folliculitis. *Id*. Dr. Liaw prescribed Doxycycline to treat the infection, but Wright told Dr. Liaw that he was allergic to the medication. *Id*. Dr. Liaw then changed the antibiotic to Augmentin and also prescribed a steroid skin cream. *Id*. Wright avers it took several days to receive the medication and his condition continued to decline. *Id*.

On July 9, 2024, Wright spoke to a nurse during a medication pass and showed her his rash. *Id*. The nurse contacted Dr. Liaw, who changed Wright's diagnosis from a bacterial infection to a viral infection. *Id*. at 2-3. Dr. Liaw prescribed a different antibiotic called Linezolid and ordered additional steroid cream. *Id*. at 3.

On July 14, 2024, Wright states he received his medication but his infection had gotten much worse. *Id*. at 3. He struggled to keep his skin infection clean, which had turned into puss filled boils. *Id*. By July 30, Wright submitted a healthcare request form because his condition had declined. *Id*. However, he did not receive a response to his request. *Id*.

Six days later, on August 5, 2024, Wright saw Dr. James Jackson[1] for a routine exam. *Id*. He prescribed a different antibiotic along with a round of steroids. *Id*. However, Wright contends the medication did not help him. *Id*.

---

[1] Wright has not named Dr. Jackson as a defendant in this case.

On August 8, 2024, just three days after he had been prescribed new medication, Wright submitted another healthcare request form because he was not getting better. *Id*. Several weeks later, he submitted a formal grievance about his situation. *Id*.

On August 30, 2024, Wright wrote a letter to Health Services Administrator ("HSA") Nicole Bridegroom asking her for assistance with seeing a doctor. *Id*. He states it had been more than two months since his initial visit with Dr. Liaw and his condition had not improved. *Id*. Wright states he was also beginning to develop scars from the untreated boils on his skin. *Id*. He asserts that HSA Bridegroom did not respond to his letter, but three days later, on September 3, 2024, he was given a medical pass. *Id*. at 3-4. Wright was seen by a nurse, who told him she could not help him before first contacting Dr. Liaw because he was the doctor assigned to his case. *Id*. at 4.

On September 7, 2024, Wright was given a pass to pick up a prescription for Doxycycline. *Id*. However, he was allergic to the antibiotic and previously told Dr. Liaw that he could not take it. *Id*. The nurse then contacted Dr. Liaw, who changed Wright's prescription to Linezolid. *Id*.

On September 28, 2024, Wright submitted another healthcare request form and was seen by a nurse, who told him she would order a skin biopsy. *Id*. However, Wright avers that he was never given a skin biopsy, is covered in scars, and continues to suffer from the same skin infection, which is not being treated. *Id*. Wright seeks monetary damages from the defendants and a lateral transfer to another facility. *Id*. at 6.

In light of these events, Wright contends that the defendants violated his rights under the Eighth Amendment when they denied him constitutionally adequate medical

care for his skin infection. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-98 (internal quotations and citations omitted).

The law has "identified several circumstances that can be enough to show deliberate indifference" by a medical professional. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016). "First, and most obvious, is [an] official's decision to ignore a request for medical assistance." *Id.* Second, an inmate can provide evidence the medical professional "persist[ed] in a course of treatment known to be ineffective." *Id.* at 730. Third, an inmate can provide evidence of "an inexplicable delay in treatment which serves no penological interest." *Id.*; *see also Rodriguez v. Plymouth Ambulance Serv*., 577 F.3d 816, 832 (7th Cir. 2009).

In this case, Wright initially contends that Dr. Liaw was deliberately indifferent to his serious medical condition. ECF 20 at 4. He asserts that Dr. Liaw purposefully prescribed antibiotics which he knew were ineffective in treating his skin rash. *Id*. at 5. Wright avers Dr. Liaw prescribed five antibiotics during a two-month period and, at times, prescribed the same antibiotic twice knowing that it did not help Wright when he initially prescribed it. *Id*. Wright asserts Dr. Liaw also prescribed Doxycycline on two occasions even though he was allergic to it. *Id*. Furthermore, he states his condition has not been accurately diagnosed because Dr. Liaw did not perform a skin biopsy. *Id.*

Wright has plausibly alleged a claim for deliberate indifference against Dr. Liaw given Dr. Liaw's ineffective treatment. Here, Dr. Liaw treated Wright twice in July 2024 and once in September 2024. In July, Dr. Liaw prescribed Augmentin and Linezolid, two antibiotics that, after several weeks of use, were ineffective in treating his skin condition. In September, Dr. Liaw prescribed Doxycycline even though Wright told Dr.

Liaw that he was allergic to the antibiotic. Dr. Liaw then changed the Doxycycline prescription to Linezolid despite its previous ineffectiveness in treating Wright's skin infection, and without further analysis to determine the nature of the infection. Furthermore, while a nurse advised Wright that he would be given a skin biopsy to diagnose the nature of his skin infection, Dr. Liaw did not order the biopsy. Therefore, Wright has alleged enough to proceed on an Eighth Amendment claim.

Wright next avers HSA Bridegroom was deliberately indifferent to his serious medical condition. ECF 20 at 4. He asserts she was aware of his medical issue because she sent him an August 30, 2024, letter and she responded in writing to one step of his formal grievance. *Id*. However, Wright avers that HSA Bridegroom ignored his requests for help. *Id*.

As previously discussed in the court's initial screening order (*see* ECF 18 at 7), while Wright asserts HSA Bridegroom did not response to his August 30, 2024, letter, the record indicates Wright was given a medical pass on September 3, 2024, just four days after he wrote to HSA Bridegroom. He was then seen by a nurse that day and, four days later, on September 7, 2024, Dr. Liaw prescribed Doxycycline, which he later changed to Linezolid. Wright has not pled facts from which it can be plausibly inferred that HSA Bridegroom's actions amounted to deliberate indifference. Thus, he may not proceed against her.

Wright has also sued Centurion Health of Indiana LLC alleging it has a policy of delaying medical treatment. ECF 20 at 4. However, there is no general *respondeat superior* liability under 42 U.S.C. § 1983, and this corporate entity cannot be held liable

for a constitutional violation solely because it employs medical staff. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020). A private company performing a public function can be sued for constitutional violations under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), but it "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of the official policy requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021).

Here, Wright speculates Centurion Health has a policy or practice of delaying medical treatment and this policy is the reason for the delay in receiving treatment for his skin infection. However, as noted in the court's initial screening order (*see* ECF 18 at 8), Wright has not alleged facts from which it can be plausibly inferred that Centurion Health has a policy or practice of delaying care or that caused the alleged delay in receiving treatment for his skin infection. Therefore, Wright has not stated a claim against Centurion Health.

Because Wright avers he has yet to receive appropriate treatment for his skin infection, he has stated a claim for permanent injunctive relief against the Warden of Westville Correctional Facility. The Warden in his official capacity has the authority and the responsibility to ensure that Wright receives constitutionally adequate medical care. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, Wright will be permitted to proceed against the Warden of Westville Correctional Facility in his official

capacity for permanent injunctive relief for medical care for his skin infection, to the extent required by the Eighth Amendment.

For these reasons, the court:

(1) DIRECTS the clerk to add the Warden of Westville Correctional Facility in his official capacity as a party to this action;

(2) GRANTS Ron Eric Wright leave to proceed against the Warden of Westville Correctional Facility in his official capacity on a claim for permanent injunctive relief in the form of ensuring that Wright is provided with constitutionally adequate medical care for his skin infection, to the extent required by the Eighth Amendment;

(3) GRANTS Ron Eric Wright leave to proceed against Dr. Andrew Liaw in his individual capacity for compensatory and punitive damages for being deliberately indifferent to his serious skin infection from July 2024 through September 2024, in violation of the Eighth Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Centurion Health of Indiana LLC and Health Services Administrator Nicole Bridegroom;

(6) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Warden of Westville Correctional Facility and Dr. Andrew Liaw at the Indiana Department of Correction, with a copy of this order and the second amended complaint (ECF 20);

(7) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant, if they do not waive service and it has such information; and

(8) ORDERS, under 42 U.S.C. § 1997e(g)(2), the Warden of Westville Correctional Facility and Dr. Andrew Liaw to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 21, 2026

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT